UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LE BON BRUCE WALKER
    Plaintiff,

v.

NEIL SELDMAN, ET. AL.,
    Defendant

No. 06-CV-00603 GK

## OPPOSITION TO MOTION TO DISMISS

COMES NOW PLAINTIFF, LE BON BRUCE WALKER ("Walker") *pro se* and respectfully opposes Defendants Diane Stewart's ("Stewart") and Elizabeth Menist's ("Menist") Motion to Dismiss the Verified Complaint under Fed. R. Civ. Pro. Rules 12(b) and 12(b)(6) for lack of jurisdiction and for failure to state a claim upon which relief may be granted. Walker refers the Court to the Memorandum of Points and Authorities below in support of his Motion.

WHEREFORE the premises considered in the Memorandum of Points and Authorities below, Walker prays that this Court deny the relief sought in Defendants' Motion to Dismiss.

Respectfully submitted,

Le Bon Bruce Walker
203 Seaton Pl., NE
Washington, DC 20002
(202) 491-2940

**RECEIVED**

JUL 2 5 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of July, 2006, a copy of the foregoing was mailed first class, postage prepaid to: David D. Hudgins, Esquire, 515 King Street, Suite 400, Alexandria, VA, 22314, James A. Sullivan, Jr., Esquire, MILES & STOCKBRIDGE, 11 N. Washington Street, Suite 700, Rockville, MD 20850, Carole McIntyre, 1922 3rd Street NW, #9, Washington, DC 20001.

*/s/ Le Bon Bruce Walker*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LE BON BRUCE WALKER            :
          Plaintiff,    :
                         :
                         :
v.                             :   No. 06-CV-00603
                         :
NEIL SELDMAN, ET. AL.,         :
          Defendant     :
_____:

**MEMORANDUM OF POINTS AND AUTHORITIES**

Menist and Stewart allege generally that Walker filed his Verified Complaint (and Amended Verified Complaint) in this Court in an improper attempt to retry the case that has been decided in the DC Superior Court and affirmed on appeal. Defendants maintain that Plaintiff's claims are therefore barred by the doctrines of *res judicata*, collateral estoppel and the applicable statutes of limitations. Menist and Stewart further argue that Walker's claims are barred for lack of this Court's jurisdiction under Fed. R. Civ. Proc. Rule 12(b)(1) and the Rooker-Feldman doctrine. Menist and Stewart also argue that Walker failed to state a claim for alleged violations under the RICO statutes, under 42 U.S.C. §1983 and that he alleged no facts to support his punitive damages claim. Walker argues that the claims in his Verified Complaint and Amended Verified Complaint[1] provide sufficient grounds to maintain his action in this Court and Plaintiff disputes Menist's and Stewart's contentions as outlined below.

---

[1] Plaintiff has a Motion for Leave to File his Second Amended Complaint to add the name of John E. Scheuremann, Esq., Menist's and Stewart's business partner and Seldman's former counsel, as a party-defendant.

## I. DISPUTES IN DEFENDANTS' VERSION OF BACKGROUND FACTS AND PROCEDURAL HISTORY.

Walker concedes generally to background facts as presented by Menist and Stewart with the following exceptions. Seldman alleged that Walker defaulted on his loan made to him against his residential property located at 1922 3rd Street NW, Washington, DC. Plaintiff actually alleged previously and in his Verified and Amended Verified Complaint that he was unsure of his default and believed that Seldman had collected the monthly mortgage payments because he collected the rents from Walker's tenants, who remained in the house after Plaintiff's incarceration. Walker never received proper notice of the foreclosure sale by Menist and Stewart and that it was received several days after the 30 day period began to run and it was preceded by letters from Seldman and his then counsel, John E. Scheureman, Esq. to contact them before they sent a corrected notice with the amount to cure ( See Verified Complaint and Amended Verified Complaint ).

The procedural history of this case as represented by Menist and Stewart contains numerous misstatements and facts not supported by the record in the DC Superior Court. Seldman in DC Superior Court, Case No. 03-3882, failed to give an answer to an Interrogatory Statement propounded upon him wherein Plaintiff answered that he had "no witnesses at that time." The trial court "grudgingly"[2] granted Walker's Motion for Reconsideration because Plaintiff properly argued that disputes in material fact existed regarding whether Walker had the right to cure any residential

---

[2]If one inspects the record in the Superior Court case, it is apparent that Defendants could not prove their claims that Walker did not have a right to cure his residential default under DC Code § 42-815.01. Walker argues that the trial court here bent over backwards to give Defendants numerous bites at the apple including attempting to dismiss Menist and Stewartar the pre-trial conference after denying their Motion to Dismiss and requiring the parties to submit additional briefs before trial. Walker answered all discovery requests and filed his pre- brief and overall prosecuted his case with due diligence.

4

default under DC Code §42-815.01 (the foreclosure notice did not include any right to reinstate the loan) and under the fraud statutes. It is an utter false hood that Plaintiff was sanctioned for his numerous discovery abuses as Menist and Stewart alleged; there is nothing in the files and records of No. 03-3882 to support this reckless assertion, despite references to it made by the parties and perhaps erroneously by the trial court.

It is also an erroneous statement that Defendants moved to dismiss the case in its entirety on grounds that Walker could not state a claim, and for his failure to prosecute the case. (Def. Mot. To Dismiss at 2). These Defendants filed their Motion on the eve of the trial date and the trial court granted the Motion, despite Walker's not having the chance to oppose it by statute, and despite his having filed supplemental briefs, establishing that the 1922 3rd Street address was his actual residence and therefore his entitlement to the right to cure his residential default. The trial court and the Defendants took advantage of the fact that on or about April 16, 2006 (a little over a week before the trial date), Walker's counsel was suspended from the practice of law for six months. Although she was able to find substitute counsel for Plaintiff, substitute counsel could not attend the hearing due to a previously scheduled matter on that date in the Prince George's County Circuit Court. Walker's former counsel appeared and sought a continuance and Plaintiff also asked for a continuance under these circumstances.

The trial court realizing the opportunity to finally give Defendants a win that they did not deserve took great lengths to use former counsels' unfortunate circumstances as a means to deny the continuance and dismiss Walker's case if he could not proceed *pro se*.[3] The trial court never ruled

---

[3] Plaintiff notes that his former counsel had represented him throughout this matter and that it was virtually impossible for the trial court to expect another lawyer to come to trial in a case with

on the merits of Walker's claims of wrongful foreclosure; instead, it dismissed Plaintiff's case on the grounds that he was unable to proceed as a *pro se* litigant, despite the fact that this was the very first continuance that Walker ever sought in his case.

The DC Court of Appeals summarily affirmed the Order of the trial court by issuing a non-opinion and citing one case as applicable authority about continuances which did not apply to Plaintiff's case. Likewise, the DC Court of Appeals denied Walker's petition for rehearing or rehearing en banc which was a purely discretionary decision and not based upon the merits of the case at all.

Walker's action filed in this Court on March 31, 2006 and on May 9, 2006, while growing out of some of the same circumstances as the action in Superior Ct No. 03-CA-3882, encompasses different circumstances, more Defendants and the claim in the DC Superior Court was never adjudicated on the issues of wrongful foreclosure or the counts outlined in the instant action before this Court.

## II. ARGUMENT

### A. The Court has Subject Matter Jurisdiction Over the Complaint

Walker contends that Menist and Stewart failed to demonstrate that this Court lacks subject matter jurisdiction over his claims. As a preliminary matter since Menist and Stewart rely upon the inclusion of matters outside of this action in support of their Motion to Dismiss, the Motion under Rule 12(b)(6) is to be treated and disposed of as one for summary judgment pursuant to Fed. R. Civ.

---

so little time to prepare. Walker has viewed this issue throughout as a prejudice to him and his former counsel, to the extent that when counsel got a stay of her suspension to represent him this matter with the consent of Bar Counsel, the trial court refused to grant a new trial. (See Exhibits 1—, attached hereto).

Proc. 56. A motion for summary judgment pursuant under Rule 56 must have a separate statement of material facts not in dispute, which the instant Motion lacks and should therefore be dismissed on procedural grounds. The instant action should not be dismissed for failure to state a claim upon which relief can be granted and Menist and Stewart erroneously assert that there is no diversity between Walker and any of the Defendants under Fed. R. Civ. Proc. Rule 12(b)(6). The Amended Complaint (and the Second Amended Complaint which is pending before this Court) names numerous Defendants who either participated in the unlawful foreclosure of Walker's property and/or who participated in the unlawful transfer and purchase of Walker's interest in all of the real properties wherein Seldman and Walker had interests either as mortgagee or as co-owners. Some of these Defendants are located or headquartered in other states (i.e., the Institute for Local Self-Reliance [Seldman's Company] , several title companies, and real estate companies who unlawfully participated in the transfer of Walker's real property). Thus, diversity jurisdiction exists for this Court to entertain Walker's claims.

The United States District Court has jurisdiction over this matter under 42 U.S.C. §1983 and under the RICO Act, and Walker maintains that he has met the prerequisite statute of limitations for this Court, pursuant to these sections of the U.S. Code. Thus, his case should not be dismissed upon these premises.

Walker argues that his *Verified Complaint* is not barred under the *Rooker-Feldman* doctrine in that this doctrine does not apply to the facts in the instant case. Walker in this instance is not seeking any review of the final judgment from the DC Superior Court and DC Court of Appeal which denied to him a continuance to his case. This doctrine prohibits a United States District Court from reviewing a final judgment of a state court and from reviewing claims "inextricably

7

intertwined" with state court decisions. *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, (1983); *Plyler v. Moore,* 129 F. 3d 728, 731 (4th Cir. 1997), cert. denied, 524 U.S. 945 (1998). The "inextricably intertwined prong of the doctrine bars a claim that was not actually decided by the state court but where access on the federal claim depends upon a determination that the state court wrongly decided the issues before it, ("actually decided prong"). *Plyler,* supra. quoted in *Brown & Root v. Breckenbridge,* 211 F. 3d 1994 (4th Cir. 2000).

In the *Brown & Root* case, the West Virginia State Court heard the argument on these litigant's case and entered a ruling on i.e. whether the Federal Arbitration Act governed their dispute and the decision of the lower court was upheld by the Court of Appeals of that jurisdiction. The reasoning by the 4th Circuit in dismissing the Brown action was that the state court has actually adjudicated the claims even though the decision may have been erroneous. Here in Plaintiff's matters, the trial court declined to hear any of Walker's issues. There was no adjudication of the validity of the foreclosure, there was no adjudication of Seldman et. al's breach of contract, no adjudication on the conspiracy or fraud aspect alleged by Walker and no adjudication on the conspiracy issues and no adjudication on the damages claim.

There was no certainly no adjudication on the federal question raised here with respect to Menist and Stewart and Walker did not raise any constitutional issues at the trial court level to bind this Court by *res judicata* principles. *England v. Louisiana State Board of Medical Examiners,* 375 U. S. 411 (1964). In this instance, the decision by the trial court is extremely ambiguous and unclear as to whether it even entertained Walker's actual issues. Within this context, Menist's and Stewart's argument and their presentation of the facts to support the contention that this case falls squarely within the parameters of the *Rooker-Feldman* doctrine is incorrect. The entire premise of Walker's

claims regarding these Defendants is that the foreclosure was carried out illegally for the purposes of stealing the property and money from Walker. Walker is alleging that Menist and Stewart conspired with Seldman and, potential Defendant John Scheuereman to fraudulently vitiate Walker's interest in his real property and then make money from Plaintiff's distress. The D.C. Superior Court never ruled that Walker's building was commercial and that the right to cure statute was inapplicable, rather it ruled circuitously that Plaintiff was not entitled to a continuance of his case which the DC Court of Appeals summarily affirmed. It is plain that Walker's constitutional rights have been violated in regards to his real property since the state court declined to hear any of Plaintiff's matters upon the merits. There are no "inextricably intertwined" claims with the litigation in the DC Superior Court that preclude this court's jurisdiction under the *Rooker-Feldman* doctrine or any other doctrine of preclusion.

B.   **The Complaint is Not Barred by *Res Judicata* and Collateral Estoppel**

Walker contends that his claims before this Court are not barred under the doctrine of *res judicata* or claims preclusion and neither is he collaterally estopped from bringing his claims in this Court against these Defendants. Plaintiff reiterates that his claims before the U. S. District Court were never adjudicated and dismissed on the merits in the DC Superior Court. The doctrine of collateral estoppel may be invoked against a moving party were (1) the issue has actually been litigated; (2) has been determined by a valid, final judgment on the merits; (3) has been determined after a full and fair opportunity for litigation by the party; and (4) under circumstances where the determination was essential judgment and not merely dictum. *Wilson v. Hart,* 829 A.2d 511, 514 (DC 2203); *Howard University v. Lacy,* 829 A.2d 733, 736 (DC 2003).

The facts as outlined in this Opposition are clear that Walker's claims were never litigated

9

that the decision rendered by the DC Superior Court was not necessary and not related to the foreclosure and the related claims. Walker never had a full and fair opportunity to litigate his issues before the state court and the final judgment rendered by the State Court was not identical to the issues before this Court. Since the issues herein are not the same issues adjudicated by the State Court, Walker's claims are not barred under the either of these doctrines *(res judicata* and collateral estoppel). Plaintiff's claims should not be dismissed on these grounds.

C. **The Complaint Falls Within the Applicable Statues of Limitation.**

Menist and Stewart argue that Walker's RICO claim and his § 1983 claim became time-barred in January 2006 (the date of the foreclosure) and in January 2005 for § 1983 claim. Plaintiff maintains that this is not the case. Generally a four-year statute of limitations is applied to civil RICO claims. *Agency Holding Corp. v. Malley-Duff & Assoc.,* 483 U.S. 143 (1987). The injury discovery rule controls as to when the statute of limitations kicks in and requires the statute to begin running when the plaintiff knew or should have known of his injury. *Rotella v. Wood,* 528 U.S. 549 (2000). In the instant case, Walker made it clear that he was incarcerated when the foreclosure took place and that the notice arrived to him well after the foreclosure date. In addition, Walker was deceived by Seldman, et. al. into believing that Defendants were going to work with him after the foreclosure to give him his property back and finally around June 25, 2002, Plaintiff received formal notice to the contrary. Thus, the actual four (4) year tolling of time for the RICO claim should run from June, 2002 for Walker's RICO claims since he has alleged fraud and conspiracy with respect to these Defendants' actions.

Similarly, the 4 year statute of limitations may be "borrowed" as the period from which the § 1983 claim runs in that the claims under the RICO Act related to Walkers civil rights violations

under 42 U.S.C. § 1983. §1983 does not contain a statute of limitations and in the light most favorable to the Plaintiff, it is reasonable to assume that the application of a statute of limitations for a § 1983 claim can be conferred by the underlying federal RICO claims. *Spiegler v. District of Columbia,* 866 F. 2d 461, 463 (D.C. Cir. 1989). This Court has jurisdiction over Walker's claims against Menist and Stewart because the claims are not precluded by the applicable statute of limitations.

### D. Walker Has Made a Claim For Violations Under the RICO ACT.

The elements necessary to state a claim under RICO are that the defendant commits two or more acts constituting a pattern of racketeering activity, directly or indirectly invests in, or maintains an interest in, or participates in an enterprise, the activities of which affect interstate or foreign commerce. Inherent in the elements that fall under the RICO ACT are claims which constitute conspiracy and fraud. Conspiracy claims under RICO contains the elements that the defendant(s) had knowledge of the general nature of the conspiracy, had an agreement to personally commit a violation of 18 U.S.C.§1962 (a-c)(conspiracy), aided or abetted a violation, and an injury was caused by an act in furtherance of the conspiracy.

In the instant case, the Substitute Trustees had the duty to mail the Notice of Foreclosure to Walker and to make sure that it complied with the laws governing foreclosures in the District of Columbia. Said Notice was mailed after the running of the time for the foreclosure and it did not contain any provision governing Walker's right to cure. The foreclosure Notice solely protected Seldman's rights and the Substitute Trustees who owed to Walker a duty of care to also protect his rights pursuant to the Deed of Trust, failed to carry out that duty. There is no doubt that Menist and Stewart unlawfully received compensation for their unlawful actions.

Menist, Stewart and Seldman's former counsel Scheuremann all worked in the same office and all were involved in the execution of the foreclosure sale as evidenced by the Notice of Foreclosure sale. Not only did Menist and Stewart send the foreclosure notice late, they knew or should have known that Seldman and his attorney were concealing the amount to cure the residential default by stating that Walker should contact them to obtain the amount and then finally stating that the amount was the full value of the loan. Menist and Stewart never sold the property at foreclosure so that Walker could pay off the loan and receive the extra proceeds; instead they conveyed title to Seldman who still retains the real property. Menist and Stewart knew or should have known that their colleague Scheuremann then wrote Walker a letter in June of 2002 indicating that the price to "buy back" his property was almost $1,000,000.00, the full market value of the house on the highest end. In essence, Menist and Stewart participated in a scheme to steal Walker's property by precluding him from curing his residential default, while he was incarcerated, then foreclosing on his property illegally, conveying said property to Seldman who through Scheuremann, attempted to receive an enormous profit on Walker's property and at his expense. These actions are consistent with mail fraud and a pattern of conspiracy and racketeering involving Walker's residential property. Thus, Walker's claims under the RICO ACT should not be dismissed with prejudice. *HMK Corp. v. Walsey*, 828 F.2d 1071 (4th Cir. 1987).

**E. Walker's Can State a Claim Against These Defendants Under 42 U.S.C. § 1983.**

In the instant case, a §1983 claim can be maintained against Menist and Stewart because the unlawful foreclosure and subsequent actions to profit by these Defendants in connection with Seldman (and Scheuremann) violated Walker's due process rights particularly since he was incarcerated. While normally due process is not violated by the right of private parties to negotiate

contracts concerning foreclosure and to foreclose, the instant situation constitutes an unlawful taking of real property under the 5th Amendment to the U. S. Constitution and the affected party was virtually unable to defend himself because his liberty interest were impeded.

In the above circumstance, the State automatically becomes an indirect party because it has affected Walker's ability to adequately protect his property interests. This automatically confers § 1983 status to this action because Walker's civil rights were violated while he was incarcerated and Defendant's used this fact to carry out their unlawful actions under color of state law. *Crissman v. Dover Entertainment*, 239 F. 3d 357 (2001). Based upon these reasons, Count II of Walker's Complaint as alleged by Menist and Stewart should not be dismissed.

**F. Walker's Claims are Sufficient for Obtaining Punitive Damages Against Menist and Stewart.**

Menist and Stewart argue that Walker is not entitled to receive punitive damages in that their actions do not arise to punishment for outrageous conduct which is malicious, wanton, reckless, or in willful disregard for another's rights and to deter from similar activity in the future. *Dyer v. William S. Bergman*, 657 A.2d 1132 (DC 1995). There is no doubt here that the Substitute Trustees in connection with Seldman (and Scheuremann) an unlawful act upon Walker and that the act was fraudulent and perfected and with ill will. Punitive damages are warranted here because Defendants deprived Walker of his real property without due process of law when he was in a position where he could not protect his interests.

## CONCLUSION

Based upon the foregoing arguments, the Motion to Dismiss must be denied.

Respectfully submitted,

_____
Le Bon Bruce Walker

Case 1:06-cv-00603-GK    Document 31    Filed 07/25/2006    Page 14 of 14