UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LE BON BRUCE WALKER, ET. AL.
    Plaintiff,

v.                                             No.1: 06-CV-00603(GK)

NEIL SELDMAN, ET. AL.,
    Defendant

**PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT
FILED ON BEHALF OF DEFENDANT CITY TITLE ESCROW CO., INC.**

COMES NOW PLAINTIFFS LE BON BRUCE WALKER ("Walker") and SELKER, LLC and respectfully oppose Defendant, City Title & Escrow Co., Inc's ("City Title") Motion for Summary Judgment on the grounds that several genuine disputes of material facts exist so as to preclude summary judgment as a matter of law. Walker refers the Court to the Memorandum of Points and Authorities below in support of this Opposition.

WHEREFORE the premises considered in the Memorandum of Points and Authorities below, Plaintiff prays that this Court deny City Title's Motion for Summary Judgment or in the alternative, deny summary judgment pending Discovery answers.

                                              Respectfully submitted,

                                              Le Bon Bruce Walker
                                              203 Seaton Place NE
                                              Washington, DC 20002
                                              (202) 491-2940

RECEIVED

SEP 1 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## CERTIFICATE OF SERVICE

I hereby certify that on this __1st__ day of __September__, 2006, a copy of the foregoing Motion above and Memorandum of Points and Authorities below was mailed first class, postage prepaid to Robert N. Levin, Esquire 1901 Research Blvd., Suite 400, Rockville, MD 20850.

Michael N. Russo, Esquire
125 West Street 4th Floor
Post Office Box 2289
Annapolis, Maryland  21404-2289

David D. Hudgins, Esquire
515 King Street, Suite 400
Alexandria, VA, 22314

James A. Sullivan, Jr., Esquire
MILES & STOCKBRIDGE
11 N. Washington Street, Suite 700
Rockville, MD 20850

Albert A. Foster, Jr., Esquire
Peter K. Tomopa, Esquire
Dillingham & Murphy, LLP
1155 Connecticut Ave NW Ste 1120
Washington, DC  20036

Carole McIntyre
1922 3rd Street NW #9
Washington, DC 20001

Alfred L Scanlan, Jr. Esquire
ECCLESTON AND WOLF, P.C.
2001 S Street NW, Ste 310
Washington, DC 20009-1125

F. Joseph Nealon, Esquire
Kirsten E. Keating, Esquire
Ballard Spahr Andrews & Ingersoll, LLP
601 13th Street NW Ste 1000 South
Washington, DC 20005

Robert A. Scott, Esquire
Ballard Spahr Andrews & Ingersoll, LLP
300 East Lombard Street, 18th Floor
Baltimore, Maryland 21202

Peter I Grasis, Esquire
10555 Main Street, Suite 450
Fairfax, Virginia 22030

_____
Le Bon Bruce Walker

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LE BON BRUCE WALKER, ET. AL.<br>Plaintiffs, | : <br> : <br> : <br> : | |
| v. | : | No.1: 06-CV-00603(GK) |
| NEIL SELDMAN, ET. AL.,<br>Defendants. | : <br> : <br> : <br> : | |

## MEMORANDUM OF POINTS AND AUTHORITIES

City Title presents no evidence to demonstrate under Fed. R. Civ. P. 56[c] or Fed. Rule 12(b)(6) that it is entitled to judgment as a matter of law and Walker maintains that it has failed to meet its initial burden of demonstrating that no genuine dispute of material fact exists to grant summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Walker, et. al. maintain that a trial is necessary to resolve the claims against City Title in light of the arguments and evidence presented below.

### I. Summary Judgment Is Inappropriate Until Discovery has been Completed.

In addition to City Title's filing a Motion for Summary Judgment, Defendant has propounded Interrogatories, Admissions and Requests for Production of Documents upon Walker. Plaintiff is in the process of answering these Discovery Requests and would request an additional 30 days (October 4, 2006) to complete his answers. Walker et. al. also intend to propound Discovery and request an additional thirty days (30) to propound Discovery upon City Title and upon all of the other Defendants to this action. Summary judgment under these circumstances, should be denied

3

at this juncture in that possible facts and evidence can be adduced from Discovery to support either party's contentions. Walker maintains that he should be given the opportunity to answer and propound Discovery upon the Defendants since he has alleged *inter alia* fraud, conspiracy, unjust enrichment, collusion and violations under RICO.

It is reasonable to assume in light of the above arguments that discovery is a necessary factor in establishing a claim against these Defendants because the allegations involve the intent of the parties. See *Estate of Nannie Hager v. Richard Snider, et. al.,* 216 W. Va 574 (2004); *Blose v. Humana, Inc.,* 2006, No. 005-CA-001546-MR (Ky Ct. of App., 2006). It is also reasonable to deny summary judgment at this stage to permit Discovery because the case is in its early stages and thus, none of the parties would be prejudiced. Moreover, Discovery should be permitted to go forth before a ruling on the dispositive motions and/or summary judgment should be denied because a dispute arises over whether the Operating Agreement of SELKER, LLC actually permitted Neil Seldman ("Seldman"), permitted City Title and the other Title Companies to transfer company property without any written resolution from Walker. Plaintiff maintains that it did not and that Discovery is necessary in order for Walker et. al., to answer and to propound Discovery requests along those lines and so that he may fully develop his allegation of *inter alia,* intentional fraud, conspiracy, RICO violations and 42 §1983 claims against City Title and the other Defendants. Walker would finally submit here that summary judgment pending answers to Discovery requests should be denied since City Title argues that its Motion in some aspects can also be considered one under Fed. Rule 12(b)(6) to dismiss on the pleadings alone.

## II. This Court Has Subject Matter Jurisdiction

City Title erroneously argues that this Court lacks diversity jurisdiction and Federal question jurisdiction over Walker, et. al.'s claims. An inspection of the Amended Verified and Second Amended Verified Complaint clearly reveals that the first sentence states that "the jurisdiction of this Court is founded upon diversity of citizenship, 28 U.S. C. §1331, 42 U.S.C. §1983 and 18 U.S.C. § 1964[c]." Although Walker et. al. wrote out diversity of citizenship instead of the applicable section of the Code, it is plain that diversity of citizenship is separated from 28 U.S.C. §1331 by a comma and that it is distinguished from jurisdiction under the Federal question (§1331). Diversity is clearly established in this case in that while Defendants Steed, Woldehanna, Emery, Monast, and Urban Communities, LLC are District of Columbia residents and entities, Defendants, the Institute for Local Self Reliance, W.C. A.N. Miller, First American Title Insurance Co., and Eastern Market, Real Estate are headquartered in Minneapolis, MN and in the State of Maryland respectively. Diversity jurisdiction exists in this matter.

In contrast to City Title's argument that no Federal question jurisdiction exists, Walker argues that Federal question jurisdiction exists by virtue of the claims under RICO and 42 U.S.C. §1983. Walker, et. al. adopt the reason in their opposition to Elizabeth Menist's and Dianne Stewart's Motion to Dismiss ( pp. 4-5) in support of the existence of Federal question jurisdiction. (See Plaintiffs' Opp. To Motion to Dismiss at pp. 6-9 attached hereto as Exhibit #1).

## III. The Motions to Dismiss and or for Summary Judgment are Inapplicable to City Title

Simply put, City Title was not a party to the action in the DC Superior Court Case No. 03-3882 and the claims involving Seldman's, Menist's and Stewart's unlawful foreclosure on Walker's residential property, 1922 3rd Street NW, WDC did not involve this Defendant. Thus, the claims

against City Title are not barred under the doctrine of *res judicata* or collateral estoppel. Likewise with respect to the absence of federal jurisdiction, by limitations, by failure to state a RICO claim under §1983, and by failure to state sufficient facts to justify punitive damages as alleged by City Title, Walker et. al. adopt in entirety, their Opposition to Menist's Stewart's Motion to Dismiss.

Plaintiffs would further reiterate here that City Title and all of the relevant Defendants carried on their illegal transfers of SELKER, LLC real property (City Title admits to handling the transactions involving two of SELKER, LLC's real properties without written consent from Walker) while Walker was incarcerated. A claim under §1983 can attach here against the private citizen Defendants in that Walker was in the State penitentiary. The State therefore had direct control over Walker's liberty interests and prevented Plaintiff's mobility to attend to his business details. Under these circumstances the State was obviously so intertwined with Plaintiff such that the State of Maryland must be recognized as a joint participant in the challenged activity. *Crissman v. Dover Down Entertainment,* 239 F. 3d 357 (2001). In other words, if Walker had not been incarcerated by the State of Maryland, he would have retained control[1] of SELKER and remained its managing member and Seldman, et. al. (including City Title) would not have been able to carry out the alleged illegal acts in this Complaint. Liability therefore attaches to City Title and all of the Defendants under §1983 through the State actor, the Jessup State Penitentiary.

City Title in support of its Motion for Summary Judgment, adopted the Motion to Dismiss or in the Alternative for Summary Judgment filed by Defendant Yohannes Woldehanna. Plaintiffs

---

[1] Walker gave Seldman additional shares in the Company bringing Defendants' total interest to 50% in light of the fact that Plaintiff was scheduled to report to the Jessup State Penitentiary in Jessup, MD in 2001. Walker also by agreement between the parties, tuned over the management of SELKER, LLC to Seldman because he could not manage the company from prison.

incorporate herein as Exhibit #2, its Opposition to Defendant Woldehanna's Motion as grounds for why City Title is not entitled to summary judgment as a matter of law on the issues raised in Woldehanna's Motion. In particular, Walker, et. al argued that Woldehanna purchased one of SELKER, LLC's real estate after a suit was initiated in the DC Superior Court regarding that property and *after* a lis pendens was filed with respect to the property. Moreover, like in the case at bar, Woldehanna purchased SELKER, LLC real estate with Seldamn as the only signatory on the sales contract and without the written consent of Walker. In addition, Walker emphasizes here as he did in his Opposition to Woldehanna's Motion to Dismiss or for Summary Judgment that under the two limited exceptions standard involving LLCs, pursuant to DC Code § 29-1015, et. seq., Plaintiff could be a proper party to an action involving SELKER, LLC because (1) he is seeking to restore and/or receive funds that belong to himself and as a member of SELKER to resolve his liability and (2) he is seeking to restore company assets wrongfully absconded from SELKER by Seldman. (See Opp. To Woldehanna' Mot. at (6-9). Summary judgment should not be granted to City Title on this issue.

City Title cannot rely upon the arguments outlined in Seldman's Motion for Partial Summary Judgment because that Motion does not involve issues pertaining to this Defendant. City Title is before this Court as a Defendant in regards to two of the real properties belonging SELKER, LLC, not on matters pertaining to Walker's residence. Therefore, it is not entitled to maintain a defense of collateral estoppel or *res judicata* as to the claims against it.

**IV. The Unconstested Facts Demonstrate That City Title is Guilty of Wrongdoing**

Contrary to City Title's assertions, it is guilty of wrongdoing in that by its own admission, Defendant handled the transfer of two of SELKER, LLC'S real properties without written resolution

or consent from Walker who owned a 50% interest in the Company assets. City Title argues that it had written resolution by virtue of Walker assigning his managerial duties to Seldman and by Walker and Seldman signing the Amended, Operating Agreement. Plaintiff's assignment of his managerial duties to Seldman in no way permitted Seldman to sell SELKER, LLC real estate without written resolution by Walker. In fact, there is nothing in the Operating Agreement that permitted such transactions involving Company assets.

The Amended Operating Agreement assigning the managerial duties to Seldman, clearly stated that all of the terms of the June 7, 2001[2] Operating Agreement applied. The June 7, 2001 Operating Agreement permitted no transactions over $5,000.00 without the consent of both members. The June 7, 2001 Operating Agreement stated in relevant part:

> Neither member may assign his interests,
> rights, powers or benefits in this LLC
> without the written consent of the other member

Pursuant to DC Code § 29-1017, only individuals possessing a majority of the shares in an LLC may be authorized to transfer or sell company assets without the consent of the other members, if an Operating agreement is silent on the transfer of such assets. Here, not only did Seldman lack the majority vote, he was not permitted to transfer any real estate having a value of over $ 5,000.00 as managing member, without the consent of Walker.

Even if this Court were to adopt the position of City Title (and it should not), the DC Statute

---

[2] Walker, et. al. note here that the Operating Agreement of June 7, 2001 was executed on June 18, 2001 and said date was affixed before the Notary beside Walker's signature. Seldman, on the other hand, erroneously affixed the date by his signature as June 7, 2000. This brings up an issue in dispute over whether the operating agreement relied upon by City Title (and the other Defendants) is even a valid document and whether Seldman had 50% or his previous 30% interest.

of Frauds prevents the transfer of real estate unless all persons having ownership interest consent in writing to the transaction. It is clear from the Amended Operating Agreement relied upon by City Title that Seldman never had the authority to sell SELKER's real estate without the written consent from Walker. City Title's argument that it did not have "constructive notice" that Seldman's authority had been terminated in 2004 is irrelevant to the fact that before Seldman's position as managing member of SELKER was revoked, Defendant Seldman had no authority to sell SELKER, LLC's real estate without written resolution from Walker. Therefore, not only did City Title have constructive notice that Seldman was selling SELKER's assets in an unauthorized manner, it knowingly participated in the transfer of two of SELKER's real properties. The evidence on its face is consistent with Walker et. al.'s argument that City Title knowingly on an insufficient document colluded and conspired with Seldman to effect the unauthorized sale of the property. Summary judgment must be denied on this point in that genuine disputes of material fact exist over whether Seldman was authorized by the Operating Agreement to liquidate Selker's assets without written consent from Walker.

### V. The Claims on Behalf of Selker, LLC should not be Dismissed Given the Unique Circumstances of the Case.

Walker et. al. incorporate by reference the relevant arguments outlined in Plaintiff's Oppositions to the dispositive Motions of Defendants, Menist, Stewart and Woldehanna. City Title cites as legal authority this Court's Opinion in *Roosevelt Land, LP v. Childress,* 2006 WL 1877014,* 3 (D.D.C.) wherein this Court held that corporations must be represented by counsel. Walker reiterates that SELKER, LLC is a Limited Liability Company not a corporation and this fact exempts it from *Roosevelt Land LP v. Childress*, supra and it is particularly exempted under the two exceptions

clause in DC Code §29-1015 regarding LLCs outlined earlier.

City Title also argues that since it handled only real estate belonging to SELKER, LLC, it should be dismissed if this Court strikes SELKER as a party. Walker, argues that even if this Court were to strike SELKER, LLC as a party (preferably without prejudice until it obtains counsel), City Title is still liable as a Defendant because its actions deprived Walker of his interest in SELKER's assets and deprived Plaintiff of any consideration from the sales. Had City Title not participated in the transfer of title to the real properties until written resolution was obtained from Walker, Plaintiff would not have been deprived of his monetary interest. Had City Title refused to go forth with settlement until the written resolution was obtained, SELKER, LLC's assets would have remained intact.

In short, City title presents no evidence that it should be dismissed as a party or that Walker's claims against it should be dismissed based on its argument that Walker could not represent SELKER's interest under these unique circumstances. (Walker is alleging wrongdoing on the part of the other managing member of SELKER). Summary judgment must be denied on this issue.

### VI. The Counts in the Amended Verified Complaint are legally Sufficient to State a Claim Against City Title.

Walker, et. al. maintain that Counts I-VI are legally sufficient to make out claims against City Title under RICO, § 1983, fraudulent conveyance, fraud, collusion and unjust enrichment and for breach of contract.

### a. Liability under RICO.

City Title is liable under RICO in that it derived money from the unlawful transfer of SELKER, LLC real property and it derived its profits more than once under the same circumstances (sale of

SELKER, LLC real estate without the written or even verbal consent from Walker). Moreover, Walker certainly made out a case for extortion as to Seldman's unlawful sale of SELKER's assets at undervalued prices and then his attempts to obtain money from Walker to make SELKER, LLC liquid in order to cover his embezzlement of the funds. Walker maintains that the Company was not in any deficiency prior to the sale of its assets.

City Title contributed to this activity, by transferring the real estate under illegal circumstances and by transferring the property at such low values when the value of real estate was soaring in the District of Columbia. A Title Company accustomed to selling real estate (particularly business assets) should have been alerted to the fact that something was suspicious about Seldman's actions. City Title derived its profit from the illegal sale of SELKER, LLC's real estate.

This Defendant is also liable even indirectly under Plaintiffs' claim for money laundering. Walker contends that Seldman, City Title and the other Defendants all participated directly or indirectly in Seldman's money laundering scheme under the criteria laid out in *U.S. v. Morales-Rodrigues,* 448 F. 3d 50, 61 (1st Cir 2006). (1) City Title conducted the financial transactions of two of SELKER, LLC's properties without the written consent of Walker. (2) Defendant knew or had reason to know that it could not transfer real estate without this written consent, which is tantamount to an illegal activity. (3) This unlawful activity permitted funds to be derived which went to Seldman and City Title. (4) City Title knew or should have known that Seldman's sale of the property at such low values was probably to conceal and to steal SELKER's assets. Walker et. al. maintain here that summary judgment should be precluded on this issue and since this issue involves intent; a ruling on the dispositive Motions should at least be precluded until after Discovery is completed.

**b. Liability under the §1983 Claim**

Walker has argued previously that he could maintain a § 1983 claim against the Defendants here because the State of Maryland by virtue of his incarceration became a participant in the challenged activity. There is no doubt that Walker had a liberty interest over his person and this interest was protected by the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. Walker could not protect his interests because he was incarcerated and Seldman et. al. obviously utilized this situation to deprive Plaintiff of his civil rights over his real property and SELKER, LLC's assets. In this instance, the State unwittingly participated and may be said to have actually "partnered" with Defendants in preventing Walker from protecting his interests and SELKER's assets.

In addition to all of the arguments above, LLC's are governed by State Regulation and answer to the State by virtue of *inter alia* filing annual reports and paying taxes. SELKER, LLC was involved in the business of renovating real properties for the Institute of Local Self-Reliance (ILSR) which is a non-profit organization which works in close connection with State and Federal Government programs and which derives grant monies from the State. It can be argued here that Defendants Seldman and the ISLR had a symbiotic relationship with the State(s) so that the State became an actor through its partnership with these Defendants. The wrongful acts carried out by Seldman (and the ILSR) deprived Walker of his interests in his real property and obviously violated his civil rights. A § 1983 claim can attach and Defendants are liable for violating Walker's (and SELKER's) civil rights herein. At any rate, Discovery must be propounded upon Seldman, City Title and the ILSR in order to further establish this claim. Count II states a claim upon which relief can be granted.

**c. There exists a Claim for Fraudulent Conveyance against City Title under Count III of the Amended Verified Complaint.**

City Title's arguments that no claim exists for Fraudulent Conveyance against it must fail for two reasons. In the first instance, real property belonging to an entity such as an LLC or a Corporation cannot be liquidated unless the individual members consent to its liquidation or members having a majority vote, agree to sell the asset. In this instance, Seldman did not have a majority, he only had a 50% interest and nothing in the signed Amended Operating Agreement permitted him to sell any of SELKER's real estate on his own as its manager. Seldman's managerial duties, which derived from the Operating Agreement under § 29 of the DC Code, simply did not authorize him to sell the assets without written consent from Walker. City Title's argument that Seldman had the authority to sell because he (Walker) signed the Amended Operating Agreement making Seldman Manager is clearly erroneous.

Secondly, Walker still retains 70% ownership in SELKER, LLC by virtue of the fact that Seldman never gave any consideration to Walker for the additional shares. City Title erroneously states that Walker sold 50% of his interests to Seldman. Walker sold 20% of his interests to Seldman making Seldman's interests equal to 50% if he had given any consideration to Plaintiff. Walker retained 70% of the interests when SELKER, LLC's assets were sold by Seldman. Even if Seldman properly had 50% of the assets, he could not sell the real estate without resolution from Walker. City Title is liable under Walker's Fraudulent Conveyance claim in the Amended Complaint and it raises no arguments sufficient to overcome this presumption.

### d. Count IV of the Amended and Second Amended Complaint States a Claim Against City Title.

As argued throughout this Opposition, Seldman's role as managing member of SELKER,LLC[3] with only a 50% interest in the Company did not authorize him to bind SELKER, LLC to the sale of its assets without Walker's consent. There is simply no evidence to support this contention by City Title and there is absolutely no evidence that Walker filed his Complaint against City Title and the other Defendants in bad faith.

City Title is guilty of conspiracy and its actions are consistent with such a claim because it carried out an agreement between Seldman, itself and the buyer of SELKER's property to sell the property without written resolution from Walker. City Title knew or had reason to know that it could not transfer the property without Walker's consent. The act of selling the property was clearly unlawful. There is no doubt that the illegal sale of two of SELKER'S properties injured SELKER, LLC and this loss of real property was outside of the intent of SELKER, LLC and outside of the intent of Walker when he put these properties into the business.

City Title's agreement to transfer two of SELKER, LLC's real properties without written consent from Walker was alleged in the Verified Complaint and constituted an unlawful agreement consistent with a conspiracy claim.

### e. City Title is Liable for Walker's Collusion and Unjust Enrichment Claims.

Walker, et. al. incorporate by reference in entirety, the argument outlined in the previous section (conspiracy) of this Opposition. City Title's argument that it did not enter into any agreement to

---

[3]Pursuant to the Operating Agreement of June 7, 2000, Seldman was only authorized to carry out the day-to-day activities of SELKER's business of renovating real properties. Seldman as previously discussed had to have the consent of Walker to carry out any financial transaction over $5,000.00. The value of real estate is certainly more than $5,000.00.

carry out an unlawful act is clearly erroneous. It was the Title Company that Seldman contracted with to sell or transfer two of SELKER's real property without written resolution from Walker, when it knew that it had to have Walker's written consent in order to transfer the real estate.

City Title is guilty of unjust enrichment here in that it obtained a fee to transfer the property and said fee belongs to Walker. In fact, Walker maintains that all of the proceeds from the sales of the properties including City Title's fees belong to him and to SELKER, LLC because Seldman lacked the authority to sell on his own without any written agreement from Walker. Summary judgment on this issue should be denied.

It is obvious that Seldman breached his contract with Walker by violating the terms of the Operating Agreement for the reasons outlined above. It is also obvious; however, that City Title is indirectly involved and bears some liability under a breach of contract claim because it sold the properties pursuant to Seldman's breach. City Title is liable under a breach of contract claim and it is not entitled to summary judgment as a matter of law.

## **CONCLUSION**

City Title presents no evidence to absolve its liability or that of the other Defendants who either transferred or purchased SELKER, LLC's real estate under unlawful contracts for sale. Moreover, it is Plaintiffs who have suffered irreparable harm as a result of Defendants' actions and none of these parties, including City Title is innocent of any wrongdoing. Walker's claims have merit and City Title (and the other Defendants) are not entitled to any dismissals of the claims against them and none of the Defendants are entitled to reasonable attorneys fees from Walker. Plaintiff should be permitted to answer and propound Discovery requests upon Defendants in that genuine disputes

of material fact exist and Walker will obtain information through Discovery to further his claims of fraud, etc. against City Title, et. al.

                                      Respectfully submitted,

                                      Le Bon Bruce Walker

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LE BON BRUCE WALKER, ET. AL.          :
      Plaintiffs,                   :
                                       :
                                       :
v.                                     :   No.1: 06-CV-00603(GK)
                                       :
NEIL SELDMAN, ET. AL.,                 :
      Defendants.                   :
_____:

**Statement of Material Facts In Dispute
by Walker and SELKER, LLC**

1. The Operating Agreement and the Amended Operating Agreement did not authorize Seldman to sell or transfer SELKER, LLC's real estate located at 1964 Second Street, NW, WDC and 1350 Meridian Pl, NW, WDC without written resolution from Walker.

2. City Title unlawfully transferred SELKER, LLC's real estate without written resolution from Walker.

3. Walker never consented to the sale or transfer of these properties.

4. City Title never sought written resolution from Walker before it handled the sale of SELKER, LLC's real estate.

5. Seldman never owned 50% of SELKER, LLC because he never tendered any consideration for the additional shares.

6. Seldman breached the Operating Agreement by exceeding his duties as managing member of SELKER and by liquidating Company properties without Walker's written consent.

7. City Title is an established Title Company doing business in the Washington, DC Metropolitan area and knew or should have known that it could not transfer an LLC's real property without the consent of all persons having an interest in such property.

8. Discovery requests should be permitted prior to any ruling on dispositive Motions because Plaintiffs have alleged *inter alia* fraud, RICO violations and conspiracy.

9. The Amended Operating Agreement is questionable or void in that Seldman affixed the wrong date beside his signature when he signed in front of the Notary.

Respectfully submitted,

_____
Le Bon Bruce Walker

## CERTIFICATE OF SERVICE

I hereby certify that on this __1st__ day of ___September___, 2006, a copy of the foregoing Statement was mailed first class, postage prepaid to all of the Defendants listed above.

_____
Le Bon Bruce Walker

18