UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

LE BON BRUCE WALKER, <u>et</u> <u>al.</u>,          :
                                        :
          Plaintiffs,                   :
                                        :
               v.                       :    Civil Action
                                        :    No. 06-603 (GK)
NEIL SELDMAN, <u>et</u> <u>al.</u>,              :
                                        :
          Defendants.                   :
---
                                        :

MEMORANDUM OPINION

The claims of Plaintiffs Le Bon Bruce Walker ("Walker") and Selker, LLC ("Selker")arise from the disposition of real property and money by Selker's then managing member, Defendant Neil Seldman ("Seldman").[1]  Defendants are numerous individuals and business entities that were involved, to varying degrees, in the purchase or sale of certain real estate.[2]  In his Second Amended Complaint,

---

[1]  References herein to Selker as Plaintiff should not be taken as an affirmation of Walker's authority to appear on behalf of the company "pro se."  Several Defendants correctly point out that Walker is not a licensed attorney, and artificial entities (e.g., corporations and limited liability companies) cannot appear in federal court without counsel.  <u>See</u> <u>Rowland v. Cal. Men's Colony</u>, 506 U.S. 194, 201-03 (1993).  However, because the instant case is disposed of on other grounds, the Court refers to Selker as Plaintiff for consistency and convenience.

[2]  The fourteen Defendants are Neil Seldman ("Seldman"), Dianne Stewart ("Stewart"), Elizabeth Menist ("Menist"), Carole McIntyre ("McIntyre"), the Institute for Local Self-Reliance ("ILSR"), W.C. & A.N. Miller Development Company ("Miller"), City Title and Escrow Company ("City Title"), Carolyn Davis ("Davis"), Eastern Market Real Estate ("Eastern Market"), First American Title Insurance Company ("First American"), Andrew Steed ("Steed"), Eric
(continued...)

Walker argues that the transactions at issue support claims for the following: 1) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C §§ 1961-68; 2) violations of 42 U.S.C. § 1983; 3) "fraudulent conveyance"; 4) conspiracy to commit fraud; 5) "collusion and unjust enrichment"; and 6) breach of contract.

Defendants First American, Eastern Market, Davis, and Emrey have filed a counterclaim against Walker and Selker to quiet title in some of the real property at issue, and they have filed cross-claims against Seldman for fraud, indemnification, and breach of warranty.

The matter is currently before the Court on motions to dismiss and/or motions for summary judgment by almost every Defendant.[3] Based on the pleadings, motions, oppositions, replies, and the entire record, for the reasons stated below, the Court grants summary judgment for Defendants on Plaintiffs' RICO and 42 U.S.C. § 1983 claims.

Additionally, many of the motions challenge the Court's subject matter jurisdiction to entertain Plaintiffs' claims.

---

[2](...continued)
Emrey ("Emrey"), Yohannes Woldehanna ("Woldehanna"), Jonas Monast ("Monast"), and John Scheuermann ("Scheuermann").

[3] Defendant McIntyre is the sole exception; she does not appear to have been served with process and has not filed any motions or pleadings in this matter. McIntyre is a former employee of Selker. Additionally, Defendant Seldman filed a Motion for Partial Summary Judgment.

Contrary to certain Defendants' contentions, Plaintiffs' claims are not jurisdictionally barred by 28 U.S.C. § 1257; however, as discussed below, Plaintiffs' federal claims are precluded by res judicata, and Plaintiffs cannot establish diversity jurisdiction pursuant to 28 U.S.C. § 1332. Therefore, the only remaining basis for jurisdiction over the parties' state-law claims, counterclaims, and cross-claims would be pendant jurisdiction under 28 U.S.C. § 1367, which the Court declines to exercise in this case.

I.    **BACKGROUND**[4]

    A.    **Disputed Real Estate Transactions**

On January 27, 2000, Defendant Seldman loaned Plaintiff Walker $174,000.00. In exchange, Walker executed a promissory note bearing interest and terms of repayment. Walker also executed a deed of trust on real property he owned, which is located at 1922 3rd Street, N.W., Washington, D.C. 20001, as security for the note.

---

[4] For the purpose of ruling on a motion to dismiss, the factual allegations of the complaint must be presumed to be true and liberally construed in favor of the plaintiff. Abigail Alliance v. Von Eschenbach, 445 F.3d 470, 475 (D.C. Cir. 2006). Accordingly, for the limited purpose of ruling on Defendants' motions to dismiss, most of the facts set forth herein are taken from Plaintiffs' Second Amended Complaint. The Court makes no findings respecting the accuracy or veracity of Plaintiffs' accusations.

Facts about prior litigation in the Superior Court for the District of Columbia and the District of Columbia Court of Appeals are taken from those courts' records, opinions, and orders which Defendants have filed as exhibits and attachments in this case.

Defendants Stewart and Menist were substitute trustees under the deed of trust.

On June 7, 2000, Seldman and Walker became business partners doing business as Seldman-Walker, LLC and later as Selker. Walker and Seldman established Selker for the purpose of owning, operating, renovating, and developing real property. Plaintiff Walker held a 70% interest in Selker, and Defendant Seldman held a 30% interest. Walker was originally Selker's managing member, but relinquished his duties to Seldman in June of 2001.[5] Walker also transferred 20% of his 70% interest in Selker to Seldman at that time, but claims he never received any consideration for his shares.[6]

Selker owned and managed real properties in northwest Washington, D.C. at 503 Rhode Island Avenue, 1934 3rd Street, 1964 2nd Street, and 1350 Meridian Place. After Seldman became managing member of Selker, he sold the company's properties. Defendants Steed, Woldehanna, Emery, and Monast are purchasers of these properties that had belonged to Selker.[7] Steed purchased the

---

[5]    Walker was incarcerated for an unknown offense in May of 2001.

[6]    Walker's Second Amended Complaint includes an exhibit noting that he transferred 30% of his interest to Seldman, but the discrepancy is irrelevant to the Court's decision.

[7]    Some of these Defendants purchased property directly from Selker, whereas others purchased property from sellers further down the title chain.

property located at 501 Rhode Island Avenue, N.W., Woldehanna
purchased 1934 3rd Street, N.W., Emery purchased 1964 2nd Street,
N.W., and Monast purchased 1350 Meridian Place, N.W.[8]

Walker argues that these Defendants are liable to him because
they purchased the properties with constructive notice of his
interest in the real estate. Walker claims that Seldman sold the
properties for prices below market value "for the purpose of
creating a deficit in [Selker's] finances" so that Seldman could
"fraudulently obtain money from [him]."

Defendants Miller, City Title, Davis, Eastern Market, and
First American are individuals and business entities that
facilitated sales and purchases of Selker properties. Miller
brokered sales, City Title conducted property settlement
transactions, Davis provided services as a real estate agent,
Eastern Market is an escrow company, and First American provided
services as a title insurance company. Walker argues that these
Defendants are liable to him because they assisted Seldman in
disposing of Selker's real property without obtaining his
authorization. Walker also claims that these Defendants had notice
of a lis pendens against the properties.

In May of 2001, Walker defaulted on the $174,000 loan, and
Seldman foreclosed on the 1922 3rd Street, N.W. property. Walker

---

[8]    It is not clear whether Selker owned properties at 501
Rhode Island Avenue, N.W. and 503 Rhode Island Avenue, N.W. because
Plaintiffs' Second Amended Complaint lists both addresses.

-5-

claims that the foreclosure sale was illegal because the property was zoned as a single family residence which, under District of Columbia law, entitled him to an opportunity to cure the default.[9] Defendant Scheuremann is Seldman's former attorney and, according to Walker, carried out the foreclosure sale of the property without providing any opportunity to cure.  Walker argues that Defendants Menist and Stewart were complicit in the allegedly illegal transaction because they failed to notify him of the foreclosure sale.  Walker also claims that Seldman and McIntyre misappropriated rents received from tenants at the property.

**B.    Other Alleged Unlawful Activity**

Defendant ILSR is a non-profit organization formed by Seldman, who operates as its President.  According to Walker, Seldman used the organization's funds for personal gain and profit, used Selker's assets to cover shortfalls on ILSR's balance sheet, and used Selker's accounts to "launder" funds from ILSR.  Plaintiffs claim ILSR receives some of its funding from government grants and contracts.

**C.    Prior Litigation**

In 2003, Walker brought an action in the Superior Court for the District of Columbia against Seldman, Menist, Stewart, McIntyre, and others for wrongful foreclosure, conspiracy to commit

---

[9]    Walker further claims that Scheuremann subverted his right to cure by incorrectly listing the property as an 11 unit apartment building.

fraud, "collusion and unjust enrichment," and breach of contract.[10]
According to Walker's Complaint in that suit, Seldman, Menist,
McIntyre, and Stewart illegally foreclosed on the 1922 3rd Street,
N.W. property by denying him opportunity to cure his default on a
$174,000.00 note.  Walkers' Complaint also alleged that Seldman had
not compensated him for shares of Selker, that McIntyre and Seldman
misappropriated rents from the 1922 3rd Street, N.W. property, that
Seldman disposed of Selker's real property without his consent, and
that Seldman mismanaged Selker's funds and accounts.

In his prayer for relief, Walker asked the Superior Court to
invalidate the foreclosure sale of 1922 3rd Street, N.W., to
"prevent and/or set aside" pending property transfers, and to void
all unauthorized and fraudulent sales of Selker's properties.
Walker also sought compensatory damages "in the amount of 50% of
the value of the assets of [Selker]," and $1 million in actual
damages.  Additionally, Walker sought $3.5 million in punitive
damages for "emotional and physical stress" caused by Seldman's
"fraudulent actions."

On April 25, 2005, the Superior Court dismissed Walker's
action for want of prosecution.  Walker filed a motion for
reconsideration on May 4, 2005 which the court denied by order

---

[10]    Walker v. Seldman, No. 03-3882 (D.C. Super. Ct. filed May
12, 2003).  Barry Mitchell and Bruce Mitchell were also named as
defendants in that suit, but do not appear as defendants in the
instant case.

dated July 25, 2005.   The District of Columbia Court of Appeals affirmed the Superior Court's dismissal on December 21, 2005 and denied Walker's motion for reconsideration of its ruling on February 14, 2006.

## II.   STANDARD OF REVIEW

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 654 (1999).  Accordingly, the factual allegations of the complaint must be presumed true and liberally construed in favor of the plaintiff. Abigail Alliance v. Von Eschenbach, 445 F.3d 470, 475 (D.C. Cir. 2006).  However, the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations. Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994)(internal citations omitted).

The Federal Rules of Civil Procedure require that if, on a motion to dismiss for failure to state a claim, the movants submit matters outside the pleadings which are not excluded by the court, the motion must be treated as one for summary judgment and disposed of in accordance with Rule 56.  Fed. R. Civ. P. 12(b).  Defendants'

motions require consideration of matters outside the pleadings and will thus be treated as motions for summary judgment.

Summary judgment will be granted when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits or declarations, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). A fact is "material" if it might affect the outcome of the action under the governing law. Anderson v. Liberty Lobby, Inc. 477 U.S. 242 (1986). The party seeking summary judgment bears the initial burden of demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In determining whether the movant has met this burden, a court must consider all factual inferences in the light most favorable to the non-moving party. McKinney v. Dole, 765 F.2d 1129, 1135 (D.C. Cir. 1985); see also Anderson, 477 U.S. at 255. Once the moving party makes its initial showing, however, the nonmoving party must demonstrate "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324; McKinney, 765 F.2d at 1135. Accordingly, the nonmoving party must provide evidence that would permit a reasonable jury to find in his or her favor. Liberty Lobby, 477 U.S. at 255-56. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).

-9-

III. **ANALYSIS**

A. **Jurisdiction**

In <u>Rooker v. Fidelity Trust Company</u>, 263 U.S. 413, 416 (1923) and <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462, 486-87 (1983) the United States Supreme Court held that federal district courts lack jurisdiction to reverse or modify final state court judgments. The <u>Rooker</u>-<u>Feldman</u> doctrine is based on 28 U.S.C. § 1257 which authorizes only the United States Supreme Court within the federal system to exercise appellate jurisdiction over final state court judgments. Consequently, the Court ruled that federal district courts lack jurisdiction to hear direct appeals from state court judgments as well as claims that are "inextricably intertwined" with state court judgments. <u>Feldman</u> 460 U.S. at 486-87. Subsequent claims may be fairly characterized as inextricably intertwined with prior state court judgments when they amount to the "functional equivalent of an appeal." <u>Gray v. Poole,</u> 275 F.3d 1113, 1119 (D.C. Cir. 2001).

Certain Defendants argue that this Court lacks jurisdiction to hear Plaintiffs' case because the instant claims are inextricably intertwined with the prior judgments of the Superior Court and the District of Columbia Court of Appeals. As discussed in detail <u>infra</u>, Plaintiffs are attempting to bring claims before this Court that were previously adjudicated by the Superior Court and District of Columbia Court of Appeals. However, Plaintiffs' claims in this

-10-

case are not the functional equivalent of an appeal because Plaintiffs do not attack, or seek to set aside, the local courts' judgments. Rather Plaintiffs are attempting to relitigate claims and bypass the local courts' judgments. See A.D. Brokaw v. Weaver, 305 F.3d 660, 664 (7th Cir. 2002) and Tremel v. Bierman & Geesing, L.L.C., 251 F. Supp. 2d 40, 44 (D.D.C. 2003) (recognizing the distinction between bypassing and attacking judgments, and noting that attempts to bypass previous adjudications are more properly disposed of under the doctrine of res judicata).

Although determining whether relitigation of a previously adjudicated claim should be barred as an attack on a judgment or precluded by res judicata may sometimes be a difficult issue, the Seventh Circuit Court of Appeals has provided a useful test to apply:

> A plaintiff who loses and tries again encounters the law of preclusion. The second complaint shows that the plaintiff wants to ignore rather than upset the judgment of the state tribunal. A *defendant* who has lost in state court and sues in federal court does not assert injury at the hands of his adversary; he asserts injury at the hands of the court, and the second suit therefore is an effort to obtain collateral review. It must be dismissed not on the basis of preclusion but for lack of jurisdiction.

Homola v. McNamara, 59 F.3d 647, 650 (7th Cir. 1995).

Walker was the plaintiff in the previous litigation. Therefore, the Rooker-Feldman doctrine does not deprive this Court of jurisdiction even though his attempt to relitigate claims is subject to preclusion.

-11-

**B.    Res Judicata Bars Plaintiffs' RICO and 42 U.S.C. § 1983 Claims**

Under the doctrine of res judicata, final judgments on the merits of a case are entitled to have a preclusive effect when parties in a subsequent action are identical (or in privity), the events underlying the claims are substantially related, and the parties have had full and fair opportunity to litigate their claims. See Nevada v. United States, 463 U.S. 110, 129-130 (1983). Res judicata bars claims that were actually adjudicated in prior litigation and all related claims that arise from the same nucleus of common facts. Judgments are final "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." Id. (quotations omitted).

Federal courts must give District of Columbia Superior Court judgments the same preclusive effect that the rendering jurisdiction would. 28 U.S.C. § 1738; Migra v. Warren City Sch. Bd. of Educ., 465 U.S. 75, 81 (1984). District of Columbia courts adhere to the rule that "a final judgment on the merits ··· precludes relitigation in a subsequent proceeding of all issues arising out of the same cause of action between the same parties or their privies, whether or not the issues were raised in the first proceeding." Carr v. Rose, 701 A.2d 1065, 1070 (D.C. 1997).

Plaintiffs base their RICO claims, in significant part, on the foreclosure sale of 1922 3rd Street, N.W. In support of their RICO claims, Plaintiffs also allege McIntyre and Seldman misappropriated rents from 1922 3rd Street, N.W., Seldman disposed of Selker's properties for less than their fair value without Walker's consent, Seldman failed to compensate Walker for his interest in Selker, Seldman and ILSR "laundered" funds through Selker's accounts, Seldman misappropriated Selker's assets, and Seldman attempted to "extort" funds from Walker by claiming Selker's assets were insufficient to cover the company's liabilities. Plaintiffs conclude the RICO section of their Second Amended Complaint with a sweeping allegation that all Defendants deprived Walker of his civil rights.

Plaintiffs base their 42 U.S.C. § 1983 claims on Seldman's having "deprived Walker of his property interests" while he was incarcerated, and on Seldman's having "deprived Walker of any interest in Selker." To support their § 1983 claims, Plaintiffs also claim that Seldman used Selker to "launder" ILSR funds and disposed of Selker's real properties to create a deficit in the company's assets.

A comparison of Walker's Complaint in the Superior Court action with Plaintiffs' Second Amended Complaint in the instant case makes it abundantly clear that the RICO and 42 U.S.C. § 1983 claims arise from the same series of connected transactions

-13-

adjudicated in Superior Court.  Walker is attempting to relitigate Seldman's authority to manage Selker, the legality of the 1922 3rd Street, N.W. foreclosure, and Seldman's disposition of Selker's real property and funds.  Defendants in the instant case were defendants, or their privies, in the prior litigation.

The Superior Court dismissed the prior case on the merits, for failure to prosecute, after Walker received a "full and fair" opportunity to litigate his claims.[11]  D.C. R. Civ. P. 41(b) (noting

---

[11]    The circumstances surrounding the Superior Court dismissal are as follows: Walker's case was set for trial in Superior Court on April 25, 2005.  On April 18, 2005, Walker's attorney's law license was suspended.  Walker's attorney became aware in late March or early April of the effective date of her suspension.  Nonetheless, shortly before trial, she assured the court that Walker was not seeking a continuance and would be represented by substitute counsel.

On April 22, 2005, the Friday before trial, Walker's counsel advised the court that Walker would not be represented on the following Monday.  On Monday, Walker moved for a continuance for lack of counsel, which the court denied.

The continuance was denied because the court concluded that Walker was fully capable of proceeding pro se since the case would be tried without a jury, Walker and the opposing parties were the only witnesses, and the case had been pared down to a single disputed factual issue (namely whether 1922 3rd Street, N.W. was Walker's personal residence).  The court also concluded that granting Walker's last-minute motion for a continuance would have unfairly prejudiced the defendants who had been litigating the case for some time.

The court explained Walker's options to him, and he chose not to proceed.  At that point, the court granted the defendants' motion to dismiss for failure to prosecute.  Order dated July 25, 2005 in Walker v. Seldman, No. 03-3882 (D.C. Super. Ct. filed May 12, 2003).

(continued...)

that "a dismissal under this subdivision and any dismissal not provided for in this Rule, other than a dismissal for lack of jurisdiction, or for failure to join a party under Rule 19, operates as an adjudication upon the merits."); see also Walker v. Seldman, No. 03-3882 (D.C. Super. Ct. filed May 12, 2003) ("The court's dismissal for want of prosecution ... was an adjudication on the merits."). Therefore, Plaintiffs' RICO and 42 U.S.C. § 1983 claims are barred by res judicata, and Defendants are entitled to summary judgment.[12]

_____

[11](...continued)
The District of Columbia Court of Appeals summarily affirmed the Superior Court's dismissal on December 21, 2005 and denied Walker's motion for reconsideration on February 14, 2006. Walker v. Seldman, No. 05-1049 (D.C. 2005).

The Superior Court subsequently granted Seldman's Motion for Cancellation and Release of Lis Pendens and his Motion for Attorney's Fees and Costs. Order dated April 13, 2006 in Walker v. Seldman, No. 03-3882 (D.C. Super. Ct.). The District of Columbia Court of Appeals summarily affirmed that ruling as well. Walker v. Seldman, No. 06-479 (D.C. 2006).

[12]    Some Defendants have not yet moved for summary judgment or dismissal on the basis of res judicata. While it is true that res judicata is an affirmative defense, courts may dismiss sua sponte when they are on notice that a claim has been previously decided because of the policy interest in avoiding "unnecessary judicial waste." Arizona v. California, 530 U.S. 392, 412 (2000).

Additionally, Walker argues that summary judgment is inappropriate at this stage because he has not had any opportunity for sufficient discovery. Walker has not filed a Fed. R. Civ. P. Rule 56(f) motion, nor met its requirements. No amount of discovery will change the fact that his Second Amended Complaint seeks recovery for claims that were brought, or should have been brought, in his Superior Court action. Walker has not shown that additional discovery would do anything more than impose unnecessary
(continued...)

**C.    Pendent Jurisdiction Is Declined Over the Remaining State-Law Claims, Counterclaims, and Cross-Claims**

No federal claims remain in this case, and Plaintiffs are not diverse from all Defendants; Plaintiffs Walker and Selker, and Defendants Steed, Woldehanna, Emery, and Monast are all citizens of the District of Columbia. <u>Eze v. Yellow Cab Co.</u>, 782 F.2d 1064, 1065 (D.C. Cir. 1986) (holding 28 U.S.C. § 1332 requires complete diversity). Therefore, Plaintiffs cannot establish diversity jurisdiction pursuant to 28 U.S.C. § 1332.

Accordingly, the only basis for federal subject matter jurisdiction over the remaining claims, counterclaims, and cross-claims is pendant jurisdiction under 28 U.S.C. § 1367. Section 1367(c), however, gives federal courts discretion to dismiss remaining state-law claims after dismissing all claims that formed the basis for original jurisdiction. Given the particularly local nature of land disputes, the absence of any substantial federal issues, and the predominance of local statutory law issues, the Court declines to adjudicate any of the remaining claims, counterclaims, and cross-claims.

---

[12](...continued)
burdens on Defendants.

**IV.    CONCLUSION**

For the reasons noted above, Defendants' motions [#12], [#35], [#10], [#93], [#4], and [#46] are granted insofar as the Court concludes that Plaintiffs' RICO and 42 U.S.C. § 1983 claims are barred by res judicata.  Those claims are **dismissed.**  Plaintiffs and Defendants are not completely diverse, so no basis for original federal jurisdiction remains.  Accordingly, all remaining claims, counterclaims, and cross-claims are **dismissed** pursuant to 28 U.S.C. § 1367(c).  All remaining motions are **denied as moot**, and the case is **dismissed.**


January 18, 2007                    /s/
                                    _____
                                    Gladys Kessler
                                    U.S. District Judge


**Copies to**:  **attorneys of record via ECF, and**

**LE BON BRUCE WALKER**
**203 Seaton Place, NE**
**Washington, DC 20003**